UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:13-cr-00445-GMN-PAL |
| Plaintiff, | **REPORT OF FINDINGS AND RECOMMENDATION** |
| v. | |
| MARCO ANTONIO PALACIOS, | (Mot. Suppress – Dkt. #37) |
| Defendant. | |

This matter is before the court on Defendant Marco Antonio Palacios' ("Palacios") Motion to Suppress Statements and Contents of Cell Phone Evidence (Dkt. #37) filed on March 10, 2014, which was referred to the undersigned for a Report of Findings and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule IB 1-4.  The court has considered the Motion, the government's Response (Dkt. #41), the testimony adduced at an evidentiary hearing held on May 1, 2014, and the arguments of counsel at the hearing.  Robert Knief appeared on behalf of the government.  Philip Brown appeared on behalf of Palacios who was present in custody.

## BACKGROUND

On December 17, 2013, Palacios and co-Defendants Mario Antonio Munguia ("Munguia") and Carols Enrique Espinosa ("Espinosa") were charged in a four-count indictment (Dkt. #19).   Each Defendant is charged with one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 8141(a)(1), (b)(1)(C), and 846, two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  The indictment arises out of arrests made by Las Vegas DEA Task Force Officers ("TFO") on December 3, 2013.

1    The indictment arises out of three undercover buys on September 4, October 23, and
2    December 3, 2013, between an undercover agent and Espinosa.  The factual background for the
3    motion is based on the probable cause statement contained in the complaint that was sworn out
4    before the indictment was returned which is attached as Exhibit "1" to the motion.   On
5    September 4, 2013, Espinosa sold an undercover agent one-half pound of methamphetamine for
6    $4000.  After the transaction was complete, Espinosa met with two unidentified males who were
7    parked in a tan Chevy Malibu and they drove out of the parking lot together.  On October 23,
8    2013, Espinosa sold an undercover agent one pound of methamphetamine for $7000.  Prior to
9    completing the transaction, Espinosa met with two unidentified males who were parked in the
10   same Chevy Malibu.  On December 3, 2013, Espinosa met with the undercover agent and sold
11   five pounds of methamphetamine for $6500 per pound.  Prior to this deal, Espinosa arrived with
12   two unidentified males who were driving a white four-door Mazda sedan.  Once Espinosa
13   showed the five pounds of methamphetamine, he was arrested along with the two occupants of
14   the white Mazda, who were later identified as co-defendants Munguia and Palacios.

15   Palacios was transported to the Las Vegas DEA office for processing following his arrest.
16   At the office, Palacios was advised of his *Miranda* rights by Edgard Mejia, a Spanish language
17   interpreter.  Palacios and the interpreter signed a Spanish version of the *Miranda* form.  The
18   motion to suppress claims that Palacios was born in El Salvador and speaks a Spanish dialect
19   knows as Salvadorian Castilian.  Prior to his interrogation, Palacios told agents he wished to be
20   "deported to El Salvador."   During the subsequent interrogation, Palacios admitted his
21   involvement in all three controlled drug buys.  After the interrogation, DEA agents requested and
22   received written consent to search Mr. Palacios' cell phone.  The Consent to Search form was
23   written in English and the agent's report does not indicate whether or not the Spanish translator
24   translated the form.

25   / / /
26   / / /
27   / / /
28   / / /

2

1

**<u>DISCUSSION</u>**

2    **I.**      **The Parties' Positions.**

3       **A.**      **Palacios' Motion to Suppress.**

4       In the current motion, Palacios seeks to suppress statements made during his custodial

5 interrogation arguing he did not knowingly, voluntarily and intelligently waive his *Miranda*

6 rights. Palacios also seeks to suppress his custodial statements on the grounds that his

7 interrogation was conducted in violation of the Vienna Convention. Finally, Palacios seeks to

8 suppress evidence obtained from his cell phone asserting the government failed to obtain a valid

9 consent to search.

10       The motion to suppress claims that Palacios' primary language is a Spanish dialect

11 known as Salvadorian Castilian, which is specific to El Salvador and differs from Spanish in

12 both spoken and written form. The motion argues that Palacios may have been confused and

13 unable to validly waive his *Miranda* rights based on: (1) the language barrier between Palacios

14 and the agents; (2) use of a Spanish language interpreter rather than an El Salvadorian interpreter

15 to interpret the interrogation; and (3) use of a general "Spanish version" *Miranda* waiver form.

16       Palacios argues he could not have knowingly, intelligently and voluntarily waived his

17 rights because he lacked the capacity to understand the warnings that were given to him.

18 Specifically, he states he completed high school in El Salvador where he spoke Salvadorian

19 Castilian. Additionally, he does not have a lengthy criminal history such that he would be

20 familiar with the legal ramifications of a *Miranda* waiver. Palacios contends that the

21 circumstances surrounding his arrest and custodial interrogation made him "especially

22 susceptible to influence" and any "perceived waiver of *Miranda* unreliable." Palacios also

23 claims that the interrogation room where he was questioned by two law enforcement officers

24 subjected him to an "inherently coercive" environment. The motion argues that considering the

25 totality of the circumstances, *Miranda* was not effectively waived and all of his custodial

26 statements should be suppressed. Defense counsel requested a *Jackson v. Denno* hearing,

27 *Jackson v. Denno*, 378 U.S. 368 (1964), to determine the extent to which any waiver of *Miranda*

28

was knowing, intelligent and voluntary if the court finds that insufficient evidence exists to suppress the statements based on the moving and responsive papers.

Palacios argues his statements to law enforcement agents should be suppressed because they were taken in violation of Article 36 of the Vienna Convention on Consular Relations. Palacios asserts that his statement to DEA agents that he wished to be "deported to El Salvador" was a specific request to contact the El Salvadorian Consulate pursuant to Article 36 of the Vienna Convention, and that the agents were required to cease their interrogation and provide him an opportunity to contact the consulate at that time "without delay." Failure to advise him of his rights under the Vienna Convention prejudiced Palacios because it deprived him of an opportunity to seek competent translation services and other legal assistance offered by the Consulate. This prejudice is severe because it led to alleged admissions that constitute the sole evidence against Palacios concerning certain charges. Under these circumstances, Palacios argues the exclusionary rule should be invoked to suppress his subsequent statements.

Finally, Palacios seeks suppression of all evidence obtained from his cell phone arguing agents failed to obtain a valid consent to search. None of the records produced in discovery indicate a Spanish interpreter was used to explain the Consent to Search form which was in English.

### B.    The Government's Response.

The government response does not oppose the motion to suppress evidence retrieved from Palacios' cell phone representing that no inculpatory information was obtained and that the government would not offer any information obtained from this cell phone at trial. The government opposes Palacios' motion to suppress statements arguing Palacios knowingly, voluntarily and intelligently waived his *Miranda* rights. The government acknowledges that when a defendant challenges the admissibility of custodial statements, it bears the burden of establishing the defendant's waiver of *Miranda* rights was voluntary, knowing and intelligent. A valid waiver of *Miranda* rights depends on the totality of the circumstances. A waiver is voluntary if, under the totality of the circumstances, "the confession is a product of a free and

4

1  deliberate choice rather than coercion or improper inducement."  Citing *United States v. Doe*,

2  155 F.3d 1070, 1074 (9th Cir. 1998).

3        The response acknowledges that there may be material differences between Salvadorian

4  Castilian and Spanish generally, however, Palacios' motion does not cite any material

5  differences.  In this case, the contract interpreter used by agents was also from El Salvador.  The

6  government's response cites cases for the proposition the "translation of a suspect's *Miranda*

7  rights need not be a perfect one, so long as the defendant understands that he does not need to

8  speak to police and that any statement he makes may be used against him."  *See United States v.*

9  *Yunis*, 859 F.2d 953, 959 (D.C. Cir. 1988) (grammatical errors in translated *Miranda* did not

10  render warning constitutionally insufficient); *Perri v. Director, Dep't of Corrections*, 817 F.2d

11  448 (7th Cir. Ill. 1987) (*Miranda* warning administered in Italian by police officer with no

12  formal training in Italian in dialect different from defendant's sufficient to effectuate valid

13  waiver); *United States v. Gonzales*, 749 F.2d 1329 (9th Cir. Or. 1984) (waiver valid where

14  defendant appeared to understand *Miranda* warnings administered by officer in broken Spanish).

15  Additionally, the government contends the defendant never indicated during questioning that he

16  did not understand the nature of his rights and the consequences of waiving those rights.  With

17  regard to voluntariness, the government asserts no physical or psychological coercion was used

18  to obtain defendant's statements, other than those circumstances that are always present when

19  police question a suspect.

20        The government does not concede that Palacios' alleged statement that he wished to be

21  deported to El Salvador was tantamount to a request for Consular Notification pursuant to Article

22  36 of the Vienna Convention.  However, the government argues that even if such a broad

23  interpretation of his request to be deported was adopted by the court, suppression of evidence is

24  not an appropriate remedy for violation of the Vienna Convention.

25  **II.    Testimony at Evidentiary Hearing.**

26        The government called the Spanish language interpreter, Edgard Mejia, and the officer

27  who conducted the interrogation, Task Force Officer Jason Johansen.  Palacios called Michelle

28  Roth, a Spanish language interpreter, and Palacios also testified.

1   **III.     Applicable Law & Analysis.**

2          **A.      Defendant's Statements.**

3          The Government has the burden of proving, by a preponderance of the evidence, whether

4   a confession is voluntary.  *Lego v. Twomey*, 404 U.S. 477, 489 (1972).  The Government must

5   also establish, by a preponderance of the evidence, that a defendant waived his protection against

6   self-incrimination under *Miranda*.  *Colorado v. Connelly*, 479 U.S. 157, 158 (1986).

7                          **1.      The Requirement for *Miranda* Warnings.**

8          *Miranda* warnings are necessary when a suspect in custody is interrogated by police.

9   *Thompson v. Keohane*, 516 U.S. 99, 102 (1995).  In *Rhode Island v. Innis*, 446 U.S. 291 (1980),

10  the Supreme Court defined interrogation as "express questioning or its functional equivalent."

11  *Id*. at 300-01.  The Supreme Court and Courts of Appeal have repeatedly emphasized that many

12  types of questions are not considered interrogation and do not require *Miranda* warnings.  For

13  example, questions asked of a motorist temporarily detained in a traffic stop do not require

14  *Miranda* warnings.  *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (*quoting United States v.*

15  *Brignoni-Ponce*, 422 U.S. 873, 881 (1975)).   Asking a suspect questions regarding general

16  biographical information is not interrogation.  *United States v. Foster*, 227 F.3d 1096, 1103 (9th

17  Cir. 2000).

18         The court finds the government has met its burden of establishing that Palacios received

19  and waived valid and effective *Miranda* warnings.  A valid waiver of *Miranda* rights depends

20  upon the "totality of the circumstances including the background, experience, and conduct of

21  defendant."  *United States v. Garibay,* 143 F.3d 534, 536 (9th Cir. Cal. 1009) (citing, *United*

22  *States v. Bernard S.,* 795 F.2d 749, 751 (9th Cir. 1986).

23         In applying the "totality of circumstances" test, the court examines whether the

24  circumstances surrounding the defendant's interrogation indicate that he knowingly and

25  intelligently waived his constitutional rights, despite English-language difficulties.  See *Derrick*

26  *v. Peterson*, 924 F.2d 813, 817-824 (9th Cir. 1990). Factors the court considers include: (1)

27  whether the defendant signed a written waiver, See *Bernard S.*, 795 F.2d at 752-753; *United*

28  *States v. Bautista-Avila*, 6 F.3d 1360, 1365 (9th Cir. 1993); (2) whether the defendant was

advised of his rights in his native tongue, see *id.*; *United States v. Gonzales*, 749 F.2d 1329, 1336 (9th Cir. 1984); (3) whether the defendant appeared to understand his rights, see *id.*; (4) whether a defendant had the assistance of a translator, see *Bernard S.*, 795 F.2d at 752-753; (5) whether the defendant's rights were individually and repeatedly explained to him, see *Derrick*, 924 F.2d at 824; and (6) whether the defendant had prior experience with the criminal justice system, see *United States v. Glover*, 596 F.2d 857, 865 (9th Cir. 1979).  *United States v. Garibay*, 143 F.3d 534, 538 (9th Cir. Cal. 1998).

There is a distinction between a claim that a *Miranda* waiver is not voluntary, and a claim that a *Miranda* waiver was not knowing and intelligent.  The voluntariness of a waiver has always depended on the absence of police overreaching.  *Colorado v. Connelly,* 479 U.S. 157, 170 (1986).  Although courts often merge the two-pronged analysis, the components should not be conflated. *Cox v. Del Papa*, 542 F.3d 669, 675 (9th Cir. 2008).  First, a valid *Miranda* waiver requires a showing that it was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, a valid *Miranda* waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *United States v. Frank*, 956 F.2d 872, 877 (9th Cir.1992). Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court conclude that *Miranda* rights have been waived. *Id.* At 877.

Palacios' motion to suppress argues that because he was from El Salvador and a Spanish language interpreter was used rather than an El Salvadoran interpreter, he could not have knowingly, intelligently and voluntarily waived his rights because he did not understand the warnings that were given to him.  He also argues that use of the general "Spanish version" *Miranda* waiver form rather than a waiver form in El Salvadoran Castilian precludes a finding that he knowingly, intelligently, and voluntarily waived his rights.  The court finds these arguments lack merit based on the testimony adduced at the evidentiary hearing.  *Miranda* warnings were read to Palacios by an El Salvadoran Spanish language contract interpreter for DEA.  Mr. Mejia's parents were born in El Salvador, he learned Spanish as a child and spoke

1  Spanish in the home until his parents moved to the United States when he was in grade school.
2  Mr. Mejia testified that Palacios did not appear to have any difficulty understanding him, and
3  gave responsive answers to the questions.  Palacios never stated he did not understand the
4  translations.

5       Defense witness Michelle Roth also testified that El Salvadoran Castilian is Spanish
6  Castilian and that she had no difficulty communicating with Mr. Palacios when she has
7  translated for him.  The Defendant himself testified that he had no difficulty communicating with
8  the court interpreters present during the hearing.  Ms. Roth also testified that the Spanish
9  language *Miranda* form given to the Defendant was "perfect Castilian Spanish."

10      The court found TFO Johansen's testimony credible that he did not conduct a custodial
11  interrogation of Palacios until after *Miranda* warnings were read to Palacios by the El
12  Salvadoran Spanish language contract interpreter for DEA.  Johansen's first contact with
13  Palacios was when he removed Palacios from the cell and took him a few steps to the interview
14  room just prior to 5:10 p.m., when he filled out the Spanish language *Miranda*  waiver form by
15  filling out the place, date and time of the interview.  Johansen was advised that Palacios did not
16  speak English and went to get Mejia who had an office in the DEA office.  He requested Mejia's
17  help before going into the interview room where he wrote down the information on the form.
18  Johansen testified that he asked a limited number of biographical/identification questions prior to
19  filling out the *Miranda* waiver form.  Palacios does not claim that he was subjected to custodial
20  interrogation at the scene of his arrest or during transport.  Johansen and Palacios both testified
21  that he was taken from the scene of the arrest to the downtown DEA office and placed in a
22  holding cell, a few steps away from the interview room.

23      Both TFO Johansen and Mejia testified that the Spanish language *Miranda*
24  acknowledgement of rights and waiver form was read to Palacios, and that Palacios initialed
25  each of the rights and signed the form before any interrogation occurred.  On cross-examination,
26  counsel for Palacios asked the translator to translate the *Miranda* waiver form which was marked
27  and admitted as government's Exhibit "1".  The translator was obviously nervous on the witness
28  stand and had some difficulty contemporaneously translating the form from Spanish to English.

Palacios and his counsel were assisted by two Spanish language court interpreters who regularly perform court translation services for this court.   During Mr. Mejia's translation, Ms. Roth advised counsel for Palacios who advised the court, that Mr. Mejia had not properly translated certain words on the form.

Defense counsel called Ms. Roth, one of the two interpreters present in assisting Palacios and his counsel at the hearing, to testify as a defense witness.   She has been an interpreter since 1990, is certified in state court and has passed the federal written test.   She testified that she made notes while Mr. Mejia was translating the *Miranda* form and that she had some issues with his translation.   Specifically, the first time Mr. Mejia translated the form, he translated the title of the form as a "notice" instead of a an "admonishment".   Mr. Mejia also translated the phrase "during trial" which should have been translated as "court of law",  and translated the phrase "waiver of rights" as "renouncement of rights".   Ms. Roth translated the Spanish language *Miranda* waiver form that Palacios signed on the record during the hearing.   Counsel for Palacios does not claim that the form itself does not adequately advise a Spanish language speaker of *Miranda* rights.   Ms. Roth testified that the form is "perfect Castilian Spanish" and that Mejia speaks Castilian Spanish.   Mejia testified he read the form verbatim.   Thus, although he was nervous and stumbled a bit on the witness stand, the court finds Palacios was made fully aware of his *Miranda* rights.   The court also finds that Palacios waived his *Miranda* rights with full awareness of the rights being abandoned and the consequences of his decision to abandon his *Miranda* rights.

Counsel for Palacios handed his client Exhibit "1", the signed *Miranda* acknowledgement and waiver form and asked if Palacios recognized it.   He responded affirmatively and testified he thought it was a document stating they were going to bring an attorney.   He signed it when Mejia came in.   Mejia interpreted it at the end of the interview and was only there for five or six minutes.   Palacios testified he was "kind of confused."   When asked whether Mr. Mejia was understandable, Palacios responded that he did not understand some words or what Mejia was saying.   Palacios got upset but could not do anything about it.

1      Palacios testified that he could read the *Miranda* waiver form that he signed.  When

2   asked whether there were any Spanish words on the form that he did not understand, he

3   responded "I think I can read it."  He reiterated that he understood the type-written words on the

4   form.  Palacios initially testified that he did not read the form in its entirety.  He later  testified

5   he was given an opportunity to read the form and read it very rapidly before signing it.  He

6   signed it in the presence of the officer and the interpreter with no one else in the room.  On cross

7   examination, Palacios clarified that Detective Johansen asked him whether he knew why he was

8   there when the interpreter was present.  Palacios believed the interpreter was there "not even

9   twenty minutes" and while the interpreter was there, "they did not ask me too many questions,

10   just signed the papers, that's it."  Palacios testified that he did not think he was waiving his rights

11   "otherwise I would not have signed."  The interpreter read the form to him rapidly and haltingly,

12   like he gets when he gets a little nervous when he reads.

13      In response to questions by the court, Palacios testified he could not recall who took him

14   the few steps between the holding cell and the interview room.  He was not threatened at any

15   time during the interview and no one made any promises to him.  The conversation he had with

16   Johansen before the interpreter arrived consisted of Johansen trying to use a few words of

17   Spanish and Palacios trying to use a few words of English.  They did not understand one another.

18   Palacios did not ask for anything to eat or drink while at DEA or in the interview room.  He was

19   given the form after it was read to him in Spanish, and given an opportunity to read it.  He

20   initialed the form next to every right and signed the form at the bottom. He wrote "si" next to the

21   two questions on the form. He testified that he "didn't think it through" and thought he was

22   "doing the right thing."  On re-direct examination, Palacios testified that he signed the form and

23   read it afterwards and understood at the time that he was going to get a lawyer.  However, on re-

24   cross examination, he testified that he did not tell Detective Johansen or Mejia that he wanted a

25   lawyer.

26      In oral argument following the hearing, counsel for Palacios argued that TFO Johansen's

27   testimony did not make any sense by suggesting that the entire interview only lasted five to six

28   minutes.  However, the form was filled out at 5:10 p.m. and signed at 5:20 p.m. indicating the

1   entire process from the initial filling out of the form to translating, initialing and signing it lasted

2   ten minutes.  Palacios testified he did not think the interpreter was there for as long as twenty

3   minutes.  By all accounts, the interview was short.

4          The interpreter stated he read the form to Palacios verbatim.  Ms. Roth testified the form

5   itself was in perfect Castilian Spanish, and that Mejia understands Castilian Spanish.  The court

6   found Mejia credible that he read the form to Palacios verbatim.  Mejia testified that he had no

7   difficulty understanding Palacios and did not have to repeat questions.  Mejia was certain that the

8   acknowledgement and waiver form was signed right after Mejia went over the form with

9   Palacios.

10         The court found TFO Johansen credible that he filled out the *Miranda* waiver form before

11   entering the interview room and only asked Palacios some initial identifying or biographical

12   information for the booking process.  The court found him credible that he filled out the portion

13   of the form inserting the place, date and time of the interrogation which Mejia then read.  The

14   court found Johansen credible that after Mejia read the form to Palacios that Johansen asked

15   Palacios to read each line individually, and initial each line which Palacios did and then signed

16   the form before any questioning was initiated.  Palacios acknowledged during his testimony that

17   he initialed the form, signed it and wrote "si" on the form next to the two questions that asked

18   whether he understood his rights, and was willing to answer questions.  The totality of the

19   circumstances surrounding Palacios' interrogation indicate he knowingly and intelligently

20   waived his *Miranda* rights.

21                   **2.        Voluntariness**.

22         For a statement to be voluntary, it must be "one that is the product of a rational intellect

23   and free will."  *United States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992) (*citing Blackburn v.

24   Alabama*, 361 U.S. 199, 208 (1960)).  In examining the voluntariness of a confession, the court

25   must consider "whether, under the totality of the circumstances, the challenged confession was

26   obtained in a manner compatible with the requirements of the Constitution."  *Derrick v.

27   Peterson*, 924 F.2d 813, 817 (9th Cir. 1991).  In addition, the Supreme Court has determined

28   that coercive police activity is a necessary predicate to a finding that a confession is not

voluntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). It is the government's burden to prove that a confession was voluntary by a preponderance of the evidence. *United States v. Jenkins*, 958 F.2d 934, 937 (9th Cir. 1991) (*citing Lego v. Twomey*, 404 U.S. 477, 489 (1972)). *See also Connelly*, 479 U.S. at 168.

To determine whether a confession is voluntary, the court applies a totality of the circumstances test. *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). The court determines whether, "considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion, or by improper inducement so that the suspect's will was overborne." *Id.* In assessing the voluntariness of a confession, the court considers "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Gifferson v. United States*, 530 U.S. 428, 434 (2000).

The court finds the government has met its burden of establishing that Palacios' statements to TFO Johansen were voluntary. There is nothing in the record to suggest Johansen exerted any physical or psychological coercion that undermined the voluntariness of Palacios' statements.

Palacios testified on his own behalf that he was arrested on December 3, 2013, at about 2:00 p.m., and taken to the DEA office downtown. It took about an hour and twenty minutes to get from the mall where he was arrested to the DEA office. Palacios does not claim that he was questioned or interrogated before his contact with TFO Johansen. Johansen testified that his first direct contact with Palacios was when he removed him from the cell to take him to the interview room a few steps away just prior to 5:10 p.m., when he filled out the *Miranda* waiver form. Palacios testified he was not given access to the El Salvadoran consulate or advised of his rights to counsel or remain silent initially. He was put in an interview room and interviewed by the officer who testified in court. The officer arrived and asked Palacios if he knew why he was there. Palacios testified that he responded that he did not know why he was there, that he was just shopping with Mario and did not see what he was carrying in his car. The interview took place in a small, separate room, and only one officer was there at first.

Palacios testified that he understands a few words of English, but did not understand what TFO Johansen was asking.  Palacios used a few words of English and Johansen got upset and said he wasn't telling the truth and hit the table with his hand.  Johansen got up and went to get somebody else.  Palacios' testimony on direct examination was not entirely consistent with his testimony on cross-examination or in response to questions by the court.  In response to questions by the court, Palacios testified that he used a few words of English, and Johansen used a few words of Spanish, but that neither one of them were able to understand each other. His testimony was confusing about when he claimed Johansen hit the table with his hand, stating he wasn't telling the truth.  At one point in his testimony he seemed to suggest this took place before the interpreter was in the room.  At another point he seemed to state it occurred in the presence of the interpreter.  Given his testimony that he and Johansen didn't understand each other, the court finds it hard to believe that Palacios understood enough English to gather that Johansen was upset and accusing him of not telling the truth.

Palacios testified that when he and Johansen were in the room alone, Johansen asked him three to four questions, but that Palacios didn't understand Johansen.  He responded rhetorically "how could I understand him if I don't understand English?"  When the question was asked a little bit differently, he again responded that he could not figure out what Johansen was asking him.  On cross examination, he also testified that Johansen asked him while the interpreter was present whether he knew why he was there, contradicting his testimony on direct examination. As indicated, the court found Johansen credible that he did not initiate custodial interrogation until after Mejia was brought into the room and *Miranda* rights were administered and waived.

In response to questions by the court, Palacios testified that Johansen did not threaten him or make any promises to him.  A second officer was present during the interview, but did not ask any questions.  Examining the totality of the circumstances the record does not support a finding that Johansen engaged in any coercive police activity or overreaching. Palacios' statements were the product of a rationale intellect and free will.

/ / /

/ / /

### 3.      The Vienna Convention

Palacios was asked on direct examination by his own counsel whether he was given access to the El Salvadoran consulate and said he was not.  Defense counsel did not, however, directly ask whether Palacios requested access to the El Salvadoran consulate.  Johansen testified that Palacios did not ask to speak to a consulate official.  However, the first thing that Palacios said after his rights were read to him in Spanish was that he wanted to be deported to El Salvador because he felt his life was in jeopardy if he remained in the United States because of his arrest.  The motion to suppress argues that Palacios' statement that he wanted to be deported "should be viewed as a specific request to contact the El Salvadoran consulate pursuant to Article 36 of the Vienna Convention."

Article 36 of the Vienna Convention on Consular Relations provides that law enforcement officials "shall inform" arrested foreign nationals of their right to notification of their consulates.  *United States. v. Lombera-Camorlinga*, 206 F.3d 882, 883 (9th Cir. 2000).  It is undisputed that TFO Johansen did not inform Palacios of his right to notification of the El Salvadoran consulate prior to questioning.  However, in *Lombera-Camorlinga*, the Ninth Circuit held that nothing in the language or operation of Article 36 of the Vienna Convention was intended to create an exclusionary rule providing the type of protections later mandated by *Miranda v. Arizona*,  *Id.* at 883-884.  In an *en banc* decision, the Ninth Circuit held that suppression of post-arrest confessions was not an available judicial remedy for a violation of Article 36 of the Vienna Convention.  ("a foreign national's post-arrest statement should not be excluded solely because he made them before being told of his right to consular notification." ) *Id.* at 885

### 4.      Cell Phone Evidence

As indicated, the government did not oppose the motion to suppress evidence obtained from Palacios' cell phone and affirmatively represented both that there was nothing inculpatory on the cell phone, and that it would not introduce any evidence taken from it at trial.  The government did not defend the cell phone search at the evidentiary hearing or meet its burden of

establishing that the English language consent to search form was voluntary.  Accordingly, the court will recommend that Palacios' motion to suppress cell phone evidence be granted.

For the reasons stated,

**IT IS RECOMMENDED** that Palacios' Motion to Suppress Statements be **DENIED**, and that his Motion to Suppress cell phone evidence be **GRANTED**.

Dated this 13th day of June, 2014.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE